Yongmoon Kim
KIM LAW FIRM LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
Telephone & Fax (201) 273-7117
ykim@kimlf.com

*Attorneys for Plaintiffs Murat Okten and Mohamad K. Mohamad*

Ronald I. LeVine
ron@ronlevinelaw.com
Eileen L. Linarducci
elinarducci@ronlevinelaw.com
LAW OFFICE OF RONALD I. LEVINE, ESQ.
210 River Street, Suite 11
Hackensack, New Jersey 07601
Tel. (201) 489-7900
Fax (201) 489-1395

*Attorneys for Plaintiff Murat Okten*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MURAT OKTEN and MOHAMAD K. MOHAMAD, *on behalf of themselves and those similarly situated,*<br><br>Plaintiffs,<br><br>vs.<br><br>FIRSTSOURCE ADVANTAGE, LLC; and JOHN DOES 1 to 10,<br><br>Defendants. | Civil Action No. 2:22-cv-01126-BRM-LDW<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT** |

Plaintiffs Murat Okten and Mohamad K. Mohamad, individually and on behalf of those similarly situated, by way of First Amended Class Action Complaint against Defendant Firstsource Advantage, LLC, and John Does 1 to 10, state:

**NATURE OF THE CASE**

1. This is a putative class action arising from Defendant, Firstsource Advantage, LLC's unlawful disclosure of private financial information to third parties without the prior consent of the consumers.

2. The Fair Debt Collection Practices Act prohibits the disclosure of information to third parties to prevent identity theft and invasions of privacy. As the National Consumer Law Center put it eloquently:

> As the world has gone digital, consumers' records, both financial and otherwise, are increasingly vulnerable to exposure. Transactions that were once fleeting, recorded only on paper and filed in some cabinet, or perhaps reduced to microfiche, are now but mouse-clicks away from duplication and dissemination.
>
> Unregulated databases, escalating numbers of mergers, and the proliferation of information brokers—private investigators who specialize in obtaining computerized records—all threaten privacy. As was noted in Congress, "databases of personal identifiable information are increasingly prime targets of hackers, identity thieves, rogue employees, and other criminals, including organized and sophisticated criminal operations."
>
> The internet raises particular privacy concerns, as information sent over the World Wide Web may pass through dozens of different computer systems, each of which can snatch and hold the information in its coffers. In addition, website owners can track consumers' online behavior and gather information about their preferences, often without their knowledge. Web bugs, or tiny graphics that are put into web pages and e-mails, can monitor who views the information. Clickstream data can tell website owners which pages of the site were viewed and for how long. "Cookies" dropped onto a computer may not identify the user by name but do identify the particular computer, which allows an interested party to assemble a great deal of information about that computer's user.
>
> Financial information is especially sensitive, able to reveal not just a consumer's standard of living and debt load, but also personal preferences and lifestyle details ranging from books bought to prescriptions purchased. In *California Bankers Ass'n v. Shultz*, Justice Powell pointed out that "[f]inancial transactions can reveal much about a person's activities, associations, and beliefs." Justice Douglas

> elaborated further:
>
> A checking account . . . [m]ay well record a citizen's activities, opinion, and beliefs as fully as transcripts of his telephone conversations . . . In a sense a person is defined by the checks he writes. By examining them the agents get to know his doctors, lawyers, creditors, political allies, social connections, religious affiliation, educational interests, the papers and magazines he reads, and so on ad infinitum.
>
> The same can be said of credit card charges, debit purchases, and online transactions. Forty years later, the details of these revealing consumer activities are easily collected, compiled, analyzed, and accessed, and thus have created a lucrative market for their trade. One industry leader among data aggregation companies, Acxiom, advertises that it has data on 2.5 billion consumers. Acxiom claims that one of its products covering American consumers has data on 250 million consumers, offering data not just on individual demographics, but also household characteristics, financial information, life events, major purchases, and behavior, all of which allows for targeted marketing. Experian reports that it manages data on more than 300 million consumers and 126 million households, while Equifax claims a database of over 115 million U.S. households distributed over 150 different segment groups, which can be used to predict behavior. In 2017, Equifax suffered a data breach that involved the personal data on nearly half the United States population being stolen, a breach that a Congressional committee found to have been "entirely preventable." In 2014, the Federal Trade Commission filed a complaint against another data broker that allegedly bought the payday loan applications of consumers and then sold the information to marketers with no legitimate need for it, leading some scammers among them to debit millions from the consumers' accounts.

National Consumer Law Center, Fair Credit Reporting (9th ed. 2017) § 18.1, *updated at* www.nclc.org/library (footnotes omitted and alterations in original) (attached as ***Exhibit A***).

    3.    For example, in enacting the FDCPA, Congress found "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy**. 15 U.S.C. § 1692(a). *See also Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303-04 (3d Cir. 2014) ("The disclosure of [the

consumer's] account number raises these privacy concerns. The account number is a core piece of information pertaining to [the consumer's] status as a debtor and Convergent's debt collection effort. Disclosed to the public, it could be used to expose her financial predicament. Because Convergent's disclosure implicates core privacy concerns, it cannot be deemed benign.").

4. Despite the *Douglass* ruling, Defendant continues to misuse and unlawfully disclose private financial information about consumers to third-parties.

5. Defendant's disclosure of sensitive financial information to third parties is an act consistent with a course of conduct and practice which was either designed to, or had as its natural consequence, an attempt to obtain money from consumers through the use of false, misleading, deceptive, abusive, unfair, unconscionable, and unlawful conduct prohibited by common law and statutory law including, but not limited to, the Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1, *et seq.*, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*

6. Defendant is subject to strict liability under the FDCPA for the prohibited communication with third parties "without the prior consent of the consumer given directly to the debt collector . . . in connection with the collection of [the] debt, with any person other than the consumer . . . ." 15 U.S.C. § 1692c(b). *See also*, 15 U.S.C. § 1692d(3).

7. Defendant also violated 15 U.S.C. § 1692f(8) by "[u]sing any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails . . . ."

8. Thus, Plaintiffs bring this class action for damages against Defendant arising from Defendant's unlawful disclosure of sensitive and confidential personal identifying and financial information, when attempting to collect debts from New Jersey consumers.

9. Defendant is subject to strict liability under the FDCPA for communicating with third parties "without the prior consent of the consumer given directly to the debt collector . . . in

connection with the collection of [the] debt, with any person other than the consumer . . . ."

## JURISDICTION AND VENUE

10. This Court has jurisdiction to entertain this matter pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

11. Venue was removed from the Superior Court of New Jersey, Law Division, Essex County to the District of New Jersey, Newark Vicinage.

## PARTIES

12. Plaintiff, Murat Okten ("Okten"), is a natural person.

13. Plaintiff, Mohamad K. Mohamad ("Mohamad"), is a natural person.

14. At all times relevant to this lawsuit, Plaintiffs were citizens of the State of New Jersey.

15. Defendant, Firstsource Advantage, LLC ("Defendant" or "Firstsource") is a collection agency with an office located at 205 Bryant Woods South, Amherst, New York, 14228.

16. Defendants John Does 1 to 10 are natural persons and/or business entities all of whom reside or are located within the United States and personally created, instituted and, with knowledge that such practices were contrary to law, acted consistent with and oversaw policies and procedures used by the employees of Defendant that are the subject of this Complaint. Those defendants personally control the illegal acts, policies, and practices utilized by Defendant and, therefore, are personally liable for all of the wrongdoing alleged in this Complaint. Those fictitious names of individuals and businesses alleged for the purpose of substituting names of defendants whose identity will be disclosed in discovery and should be made parties to this action.

17. Some or all of John Does 1-10 set the policies and practices complained of herein.

18. Some or all of John Does 1-10 were actively engaged in the practices complained of herein.

19. In this pleading, "Defendants" in the plural refers to all Defendants.

## FACTUAL ALLEGATIONS

**A.     Allegations Regarding Defendant's Practices Generally**

20. Firstsource regularly collects or attempts to collect debts that are past due.

21. Firstsource regularly collects or attempts to collect debts allegedly owed to others which were incurred primarily for personal, family or household purposes.

22. Firstsource is in the business of collecting debts or alleged debts of natural persons which arise from transactions which are primarily for personal, family, or household purposes.

23. Firstsource's principal purpose is to collect debts that are (a) owed to others by natural persons, (b) past due, and (c) were incurred by those natural persons primarily for personal, family or household purposes.

24. Such debts are placed with Firstsource for the purpose of providing collection services.

25. The debts which Firstsource attempted to collect from Plaintiffs and each member of the Class were placed with Firstsource subject to a written agreement governing the scope and nature of Firstsource's collection services.

26. When providing its collection services, Firstsource uses the mails, telephone, the internet and other instruments of interstate commerce in engaging in the business of collecting defaulted debts or alleged debts of natural persons which arise from transactions which are primarily for personal, family, or household purposes.

27. Firstsource is a collection agency.

**B.     Plaintiff Okten**

28. Firstsource has asserted that Okten allegedly incurred or owed a certain financial obligation arising out of a personal account.

29. The debt arose from one or more transactions which were primarily for Okten's personal, family or household purposes.

30. This account was assigned to Firstsource for collection.

31. Firstsource contends that the account is past due and in default.

32. The account was allegedly past due and in default at the time it was placed with or assigned to Firstsource for collection.

33. In an attempt to collect the debt, Firstsource mailed a collection letter to Okten on February 1, 2021 ("2/1/21 Letter").

34. A true copy of the 2/1/21 Letter but with redactions, is attached as ***Exhibit B***.

35. Firstsource caused the 2/1/21 Letter to be mailed to Okten in connection with its attempt to collect an alleged past due balance from him.

36. The 2/1/21 Letter included information about a specific debt which Firstsource sought to collect.

37. This debt was placed with Firstsource for collection.

38. Firstsource contends that the debt is past due and in default.

39. At the time the debt was placed with Firstsource for collection, the debt was in default and past due.

40. Okten received and reviewed the 2/1/21 Letter.

**C.    Plaintiff Mohamad**

41. Firstsource has asserted that Mohamad allegedly incurred or owed a certain financial obligation arising out of a personal account.

42. The debt arose from one or more transactions which were primarily for Mohamad's personal, family or household purposes.

43. This account was assigned to Firstsource for collection.

44. Firstsource contends that the account is past due and in default.

45. The account was allegedly past due and in default at the time it was placed with or assigned to Firstsource for collection.

46. In an attempt to collect the debt, Firstsource mailed a collection letter to Mohamad on April 7, 2021 ("4/7/21 Letter").

47. A true copy of the 4/7/21 Letter but with redactions, is attached as ***Exhibit C***.

48. Firstsource caused the 4/7/21 Letter to be mailed to Mohamad in connection with its attempt to collect an alleged past due balance from him.

49. The 4/7/21 Letter included information about a specific debt which Firstsource sought to collect.

50. This debt was placed with Firstsource for collection.

51. Firstsource contends that the debt is past due and in default.

52. At the time the debt was placed with Firstsource for collection, the debt was in default and past due.

53. Okten received and reviewed the 4/7/21 Letter.

**D.  The Disclosure to a Third Party and Publication of List of Debtors**

54. Plaintiffs never consented to Defendant communicating any information regarding their debts to anyone.

55. On information and belief, Firstsource did not draft, print, address, or mail the Firstsource Letters[1] but, instead, Firstsource entered into one or more contracts with an unrelated business firm which provides printing, addressing, and mailing services sometimes called a "letter vendor."

---

[1] The Firstsource Letters refer to the collection letters attached as Exhibit B and Exhibit C.

56. On information and belief, Firstsource's letter vendor is not Firstsource's corporate parent, subsidiary, under common ownership with Firstsource, business partner, or joint venturer but is, instead, a third-party letter vendor service provider.

57. On information and belief, the contract between Firstsource and the third-party letter vendor governs the drafting, printing, addressing, and mailing of Firstsource's collection letters including the Firstsource Letters. In particular, Firstsource provides the third-party letter vendor with one or more forms of collection letters and periodically sends data to the third-party letter vendor containing information about each debt to be merged by the third-party letter vendor into individual collection letters which the third-party letter vendor then prints, stuffs into mailing envelopes, and mails.

58. In connection with the collection of the Debt, Firstsource conveyed the data concerning the Debt to the third-party letter vendor.

59. The data which Firstsource communicated to the third-party letter vendor included: Firstsource's reference numbers; the name of the creditors, the creditor's account numbers; Firstsource's portal for account information and payment options; the amount due; and Plaintiffs' full names and mailing addresses.

60. Plaintiffs never provided consent to Defendant to communicate to third parties regarding their debts.

61. By using a letter vendor, Defendant has recklessly disclosed Plaintiffs' personal identifying information and private information about their debts to a third party without Plaintiffs' prior consent.

62. Defendant unlawfully disclosed information about Plaintiffs' debts including the account numbers associated with the debts and the alleged balance due.

63. On information and belief, when Firstsource conveyed the information about the

debts to the third-party letter vendor, the information was included in a list containing information concerning other debts which, like the debts, the letter vendor merged with Firstsource's templates.

64. The FDCPA prohibits a debt collector from communicating with third parties "without the prior consent of the consumer given directly to the debt collector . . . in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector ."[2]

65. The FDCPA also prohibits "[t]he publication of a list of consumers who allegedly refuse to pay debts . . . ."[3]

66. Unlawfully communicating with a third party letter vendor regarding Plaintiffs' debts violates the FDCPA because it is impermissible communication under sections 1692c(b) and 1692d(3) which has the potential to cause harm to a consumer.

67. The FDCPA also deems as unfair and unconscionable the "[use of] any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails . . . ." 15 U.S.C. § 1692f(8).

68. Upon information and belief, the return address — PO Box 1022, Wixom MI 48393-1022 — does not belong to Firstsource. Since it is not the debt collector's address, Firstsource violated section 1692f(8).

69. Firstsource used the same procedures it used in sending the Firstsource Letters to Plaintiffs when sending the same and/or similar letters to numerous other New Jersey consumers.

70. During the proposed class period, Firstsource sent letters the same or similar to the Firstsource Letters to numerous New Jersey consumers in an attempt to collect a debt.

---

[2] 15 U.S.C. § 1692c(b).
[3] 15 U.S.C. § 1692d(3).

71. It is Firstsource's policy and practice to unlawfully communicate and convey private and sensitive information about consumers with third parties by using third party vendors to send written collection communications in attempts to collect consumer debts.

72. Upon information and belief, Firstsource published a list of debtors, including Plaintiffs, that allegedly refuse to pay debts.

73. It is Firstsource's policy and practice to engage in unfair and unconscionable practices including "[u]sing any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails . . . ." 15 U.S.C. § 1692f(8).

## CLASS ACTION ALLEGATIONS

74. Plaintiffs bring this action individually and as a class action on behalf of all others similarly situated.

75. Subject to discovery and further investigation which may require Plaintiffs to modify the following class definition at the time Plaintiffs move for class certification, Plaintiffs seek certification of a class initially defined as follows:

> **Class**: All natural persons residing in State of New Jersey whose information was disclosed by Defendant to a third party on or after January 28, 2016, in an attempt to collect a Synchrony Bank account.
>
> > **FDCPA Subclass**: All natural persons residing in the State of New Jersey, to whom Defendant sent a collection letter; which letter (a) was dated on or after January 28, 2021; (b) was seeking to collect a consumer debt allegedly originated from Synchrony Bank; and (c) was sent using a third party letter vendor.

76. Plaintiffs seek to recover statutory damages, actual damages, and attorney's fees and costs on behalf of themselves and all class members under the claims asserted herein.

77. The Class for whose benefit this action is brought is so numerous that joinder of all

members is impracticable.

78.     There are questions of law and fact common to the members of the Class that predominate over questions affecting only individuals.

79.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. A class action will cause an orderly and expeditious administration of the claims of the Class and will foster economies of time, effort and expense by avoiding thousands of individual suits that will be based on the same legal theories that can be resolved in a single proceeding.

80.     Plaintiffs' claims are typical of the claims of the members of the Class. They are members of the Class.

81.     The questions of law and/or fact common to the members of the Class predominate over any questions affecting only individual members.

82.     Plaintiffs do not have interests antagonistic to those of the Class.

83.     The Class, of which Plaintiffs are members, are readily identifiable. The Defendant has records of each account.

84.     Plaintiffs will fairly and adequately protect the interests of the Class, and have retained competent counsel experienced in the prosecution of consumer litigation. Proposed Class Counsel have investigated and identified potential claims in the action; have a great deal of experience in handling class actions, other complex litigation, and claims of the type asserted in this action.

85.     The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the Defendant in this action or the prosecution of separate actions by individual members of the class would create the risk that adjudications with respect to individual members

of the class would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. Prosecution as a class action will eliminate the possibility of repetitious litigation.

86. Plaintiffs do not anticipate any difficulty in the management of this litigation.

### FIRST COUNT
### DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF FOR THE CLASS

87. Plaintiffs repeat and reallege all prior allegations as if set forth at length herein.

88. Defendant's prohibited disclosure of private and sensitive information constitute unfair and unconscionable commercial practices and otherwise violate the Consumer Fraud Act ("CFA") at N.J.S.A. 56:8-2 and the FDCPA at 15 U.S.C. § 1692 *et seq*.

89. Plaintiffs suffered ascertainable loss from Defendant's CFA violations, including but not limited to reputational harm from Defendant's communication of data to its third-party letter vendor.

90. Plaintiffs therefore have standing to seek injunctive and other equitable relief under the CFA, at N.J.S.A. 56:8-19, and the FDCPA.

91. Upon information and belief, Defendant continues to pursue collection against Plaintiffs, so Plaintiffs remain at risk for further prohibited disclosure of private and sensitive information by Defendant to unauthorized third parties.

92. Moreover, under the Uniform Declaratory Judgments Law at N.J.S.A. 2A:16-53, the Plaintiffs and the putative Class members can seek declaratory relief.

93. The Defendant and its agents or others acting on their behalf should be enjoined from any further action or failing to take actions that result in any invasion of privacy, retain benefits from its illegal acts using protected private and financial information.

**WHEREFORE**, as to Count One, Plaintiffs, on behalf of themselves and the putative class

members, hereby request a Judgment against Defendant, jointly and severally,

    a. Granting class certification for class-wide equitable relief, and issuing a declaratory judgment applicable to the Plaintiffs and putative Class and Subclass, pursuant to the Uniform Declaratory Judgments Law at N.J.S.A. 2A:16-53, ruling that:

        1. Defendant violated the CFA.

        2. Defendant violated the FDCPA.

    b. Granting a permanent injunction against the Defendant, pursuant to the CFA, at N.J.S.A. 56:8-19, and the FDCPA prohibiting them from the disclosure of consumer's information;

    c. Directing the Defendant to provide equitable notice relief pursuant to the CFA and FDCPA, providing for notice to Class members of the declaratory and injunctive ruling.

    d. Awarding Plaintiffs' counsel reasonable attorneys' fees and costs under the CFA;

    e. For such other and further relief as the Court deems equitable and just.

## SECOND COUNT
### DAMAGES UNDER THE CONSUMER FRAUD ACT ON BEHALF OF THE CLASS

94. Plaintiffs repeat and reallege all prior allegations as if set forth at length herein.

95. Defendant is a "person" within the meaning of the CFA at N.J.S.A. 56:8-1.

96. Plaintiffs and those similarly situated obtained "merchandise" within the meaning of the CFA at N.J.S.A. 56:8-1.

97. Defendant engaged in unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations in connection with the sale of merchandise in violation of the CFA at N.J.S.A. 56:8-2.

98. Defendant engaged in unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations in the subsequent performance of the sale of

merchandise in violation of the CFA at N.J.S.A. 56:8-2.

99. Defendant committed unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations in direct violation of the CFA at N.J.S.A. 56:8-2.

100. As a result of Defendant's unlawful actions, Plaintiffs and the Class members suffered ascertainable loss from Defendant's CFA violations, entitling them to treble damages under the CFA, at N.J.S.A. 56:8-19.

**WHEREFORE**, as to Count Two, Plaintiffs, on behalf of themselves and the putative Class members, hereby request a Judgment against Defendant,

   a. Granting class certification of the Subclass;

   b. Awarding treble damages under the CFA, at N.J.S.A. 56:8-19;

   c. Awarding Plaintiffs' counsel reasonable attorneys' fees and costs under the CFA, at N.J.S.A. 56:8-19;

   d. For pre-judgment and post-judgment interest; and

   e. For such other and further relief as the Court deems equitable and just.

### THIRD COUNT
### NEGLIGENCE ON BEHALF OF THE CLASS

101. Plaintiffs repeat and reallege all prior allegations as if set forth at length herein.

102. Defendant owed the Plaintiffs a duty to maintain the confidentiality of their private and financial information.

103. Defendant, as a debt collector, was not allowed to publish said private financial information in accordance with the Fair Debt Collection Practices Act.

104. Accordingly, the FDCPA establishes a certain standard of conduct for debt collectors when handling a debtor's confidential information.

105. Expert testimony is not required to establish that the disclosure of confidential and protected information breaches a commonly known duty owed by Defendant.

106. The disclosure of the confidential and protected information of the Plaintiffs and the Class damaged them by exposing their private information to persons who lacked any right or entitlement to know their private information.

107. The Plaintiffs and others have suffered a compensable loss arising from the disclosure of their protected private and financial information.

108. The Class has likewise suffered a compensable loss arising from the disclosure of their protected private and financial information.

**WHEREFORE**, as to Count Three, Plaintiffs, on behalf of themselves and the putative Class members, hereby request a Judgment against Defendant,

a. Granting class certification of the Class;

b. A money judgment for compensatory damages based on the Defendant's disclosure of the Plaintiffs and Class's private information;

c. For attorney's fees, litigation expenses and costs in connection with this action;

d. For pre-judgment and post-judgment interest; and

e. For such other and further relief as the Court deems equitable and just.

### FOURTH COUNT
### INVASION OF PRIVACY ON BEHALF OF THE CLASS

109. Plaintiffs repeat and reallege all prior allegations as if set forth at length herein.

110. Defendant invaded the privacy of Plaintiffs by unreasonable publication of private facts.

111. These private facts, Plaintiffs' financial information, are actually private matters, the dissemination of such facts would be offensive to a reasonable person and there is no

legitimate interest of the public in being apprised of the facts publicized.

112. Defendant was prohibited by 15 U.S.C. § 1692c(b) and 1692d(3) from publishing said financial information to third parties.

113. Plaintiffs had a reasonable expectation that said financial information would not be shared except in compliance with the law.

114. The Plaintiffs and others have found the disclosure of financial information to third parties in violation of the law to be highly offensive.

115. Expert testimony is not required to establish that the disclosure of confidential financial information invaded a person's privacy.

116. By publishing the private financial information of the Plaintiffs and the Class, Defendant damaged them by exposing their private information to persons who lacked any right or entitlement to know their private financial information.

117. The Plaintiffs and others have suffered a compensable loss arising from the invasion of their privacy.

118. The Class has likewise suffered a compensable loss arising from the invasion of their privacy.

**WHEREFORE**, as to Count Four, Plaintiffs, on behalf of themselves and the putative Class members, hereby request a Judgment against Defendant,

    a. Granting class certification of the Class;

    b. A money judgment for compensatory damages based on the Defendant's invasion of the privacy of the Plaintiffs and Class;

    c. For attorney's fees, litigation expenses and costs in connection with this action;

    d. For pre-judgment and post-judgment interest; and

    e. For such other and further relief as the Court deems equitable and just.

## FIFTH COUNT
### FAIR DEBT COLLECTION PRACTICES ACT FOR THE FDCPA SUBCLASS

119. Plaintiffs repeat and reallege all prior allegations as if set forth at length herein.

120. Defendant is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

121. The debts are "debt[s]" within the meaning of 15 U.S.C. §1692a(5).

122. Plaintiffs are "consumer[s]" within the meaning of 15 U.S.C. § 1692a(3).

123. The Firstsource Letters are "communication[s]" as defined by 15 U.S.C. § 1692a(2).

124. Defendant sent the Firstsource Letters in an attempt to collect "debts" within the meaning of 15 U.S.C. §1692a(5).

125. Defendant violated the FDCPA including sections 1692c, 1692c(b), 1692d, 1692d(3), 1692f, and 1692f(8) of the FDCPA.

126. Based on any one of those violations, Defendant is liable to Plaintiffs and the Class for statutory damages, attorney's fees and costs under 15 U.S.C. § 1692k.

**WHEREFORE**, as to Count Five, Plaintiffs, on behalf of themselves and the putative Class members, hereby request a Judgment against Defendant, Firstsource Advantage, LLC,

   a. An order certifying that the Cause of Action may be maintained as a class including defining the class, defining the class claims, and appointing Plaintiffs as the class representatives and the undersigned attorney and The Law Office of Ronald I. LeVine, Esq. as class counsel;

   b. An award of statutory damages for Plaintiffs pursuant to 15 U.S.C. § 1692k(a)(2)(A) and § 1692k(a)(2)(B)(i);

   c. An award of statutory damages for the Class pursuant to 15 U.S.C. § 1692k(a)(2)(B)(ii);

   d. Attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1692k(a)(B)(3); and

   e. For pre-judgment and post-judgment interest; and

    f.    For such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues subject to trial by jury.

## CERTIFICATION

Pursuant to Local Rule 11.2, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any action pending in any court or the subject of a pending arbitration proceeding, or administrative proceeding contemplated. However, there is a case styled *Scibilia v. Firstsource advantage, LLC*, Case Number: 2:21-cv-12125-BRM-LDW, currently pending in the District Court for the District of New Jersey.


Dated: April 7, 2022                                              KIM LAW FIRM LLC

                                                                  *s/Yongmoon Kim*
                                                                  Yongmoon Kim, Esq.

                                                                  *Attorneys for Plaintiffs*